STOULIG, Judge.
This appeal involves a malpractice claim against a doctor who inadvertently punctured the bladder of a three-year-old boy while surgically removing a right inguinal hernia and hydrocele. The damage suit filed by Webster P. Detillier, Jr., on his own and his son’s behalf against Dr. Dennis H. Groome, Jr., was dismissed by the trial judge, who gave these written reasons:
“ * * * [T]he Court concludes that plaintiff failed to prove that defendant doctor did not -exercise that degree of skill and care which is usually possessed and exercised by practitioners of his profession in this locality and community. The Court feels that the cutting of the bladder in this case was a complication inherent in the operative procedure and was not the result of any improper conduct on the part of defendant doctor.”
Plaintiff has appealed, arguing primarily that the trial judge erred because he placed the burden of proof on the wrong litigant. He contends once defendant admitted cutting the bladder, it was incumbent on him to prove his freedom from negligence under the evidentiary rule of res ipsa loquitur. Alternatively, appellant submits the evidence affirmatively establishes defendant’s negligence.
Dr. Groome examined young Detillier on February 4, 1971, diagnosed a right inguinal hernia and possible hydrocele, and advised plaintiff the condition should be surgically repaired. At plaintiff’s request, defendant, who has held full surgical privileges at Mercy Hospital since 1952, undertook the operation on February 11, 1971.
The surgical technique demonstrated by the defendant in excising the hydrocele and performing the hernioplasty was *877 weighed and evaluated by the medical experts appearing in this case, predicated on their review of defendant’s operation notes. The integrity of these notes was not impugned, but on the contrary, their accuracy was confirmed by the testimony of the defendant. For these reasons we quote Dr. Broome’s operation notes in their entirety:
“Dr. Dennis H. Groome Master Webster Detillier III 2/11/71
Preoperative diagnosis: Right inguinal hernia and possible hydrocele.
Postoperative diagnosis:
Operative procedure: Right inguinal hernioplasty and repair of rent in bladder.
Under general anesthesia, with the patient in the supine position, the abdomen was prepared with ether and tincture of zephiran. Patient was draped in the usual manner.
The abdomen was opened by means of an oblique incision in the right lower quadrant paralleling Poupart’s ligament. The aponeurosis of the external oblique was incised and the contents of the inguinal canal were pulled upwards for inspection.
Upon pulling up the structures and identifying the cord, the apparent hydrocele was pulled upward and incision made. A yellowish fluid exuded from this area and upon further inspection was found that we had inadvertently put a hole in the urinary bladder. The rent in the urinary bladder was repaired with a continuous atraumatic chromic #00 intestinal suture, followed by a second layer of interrupted sutures of chromic #00 with an intestinal suture through the muscularis overlying this and the angles were inverted.
Repair of the hernia was then done. The hernial sac was isolated and identified, as was the cord on the lateral borders of it, traversing down through the inguinal canal. High ligation of the inguinal sac was performed. The excess was cut away and the remnant was attached to the undersurface of the conjoined tendon.
Closure of this area was performed by approximating the conjoined tendon to the shelving portion of Poupart’s ligament with interrupted sutures of silk #000.
The cord and structures were not transplanted.
With the closure of the canal in this manner, the aponeurosis of the external oblique was closed with interrupted sutures of #000 silk after the conjoined tendon was approximated with silk #00 to the shelving portion. With all bleeding controlled, a continuous subcuticular suture of plain #000 was put in place and steri-pads applied.
Dressing was applied. A #8 Bardex catheter with a 3 cc. bag was put in place in the urinary bladder and the bag filled in order to prevent falling. A bag was attached to this and the patient returned to the hall in good condition.”
Defendant’s testimony covered post-surgical procedure not included in the report. He stated the rent in the bladder necessitated inserting a catheter through the penis into the bladder and flushing it with a saline solution to remove some of the blood. He explained the flushing procedure was not continued until the urine was free of blood because it would have been a hazard to keep a three-year-old child under general anesthetic for the time it would take to accomplish this. The boy was hospitalized for ten days after the surgery, and during most of this time the catheter was required to assist passing what blood clots remained in the bladder.
Dr. Groome advances as a cause for the cutting of the bladder that the hydro-cele and bladder are covered by fatty tissue identical in appearance, and there *878 is no way to distinguish one from the other prior to incision. He testified that in lifting up the cord sometimes the bladder or part of it is pulled within the surgical site. Further he stated this incident was the second time in 20 years that he had cut a bladder in this type of operation out of an estimated 75 to 100 hernioplasties that he had performed. He pointed out that it is one of the contingencies encountered in this type of surgery because often the wall of the bladder is contiguous with and adherent to the wall of the hy-drocele without cleavage or demarcation.
Before discussing the appraisals of this technique by the various medical experts, we mention at this point that the hernia recurred and was surgically removed without incident on January 3, 1972 by Dr. Hewitt Thian.
Dr. Thian appeared as a witness for defendant and affirmed (1) the puncture of a bladder is one of the risks involved in a hernioplasty (he estimates he has punctured two bladders in the course of approximately 500 hernioplasties); (2) the puncture of a bladder does not mean the surgeon proceeded improperly or was negligent; (3) in many cases the medial wall of the sac of a hernia is the outside wall of the bladder; (4) the notes in the hospital record describing this surgery indicate the surgeon followed a standard acceptable procedure; and (5) the recurrence of a hernia does not mean the first surgery was unsuccessful or improper because he estimates that it recurs in 10 to 15 percent of the cases.
Dr. Gerald LaNasa, a urologist consulted by Dr. Groome at the request of plaintiff and his wife, testified his review of the quoted notes reflected Dr. Groome followed the accepted standards in the community considered to be good practice. He explained the possibility of a bladder puncture is “always there” in this type of surgery much the same as the possibility of cardiac arrest is a risk whenever a general anesthetic is administered. He recalls two instances of bladder puncture when he was assisting in surgery and noted he has been called in on six or eight separate occasions as a consultant after the bladder was inadvertently cut. Dr. LaNasa stated he does not normally “pull up” the cord in pediatric surgery, in which respect his technique differs from that used by Dr. Groome. However, he -made this as a general statement and did not testify or imply that Dr. Groome’s procedure was improper. In fact the operation notes clearly state the cord was pulled up, and in reviewing them, Dr. LaNasa termed the entire procedure to be within acceptable medical standards.
The final medical expert to appear for plaintiff was his associate Dr. Christopher Bellone, chief of staff at Mercy Hospital. After reviewing the surgeon’s entries in the hospital record, he deemed the procedure acceptable and consistent with good medical services as rendered in this community. He estimates he may have opened 15 bladders inadvertently during his long surgical practice. In his view, pulling up the cord is a necessity because it is important to recognize the vas deferens and spermatic cord before proceeding. He also verified hernias recur 10 to 15 percent of the time.
Plaintiff produced one surgeon who contradicted the opinions of the other four doctors. In his view, the lifting of the cord is improper procedure in a her-nioplasty in a child under seven years old. He further stated the hydrocele and bladder should be easily differentiated because the former is usually (not always) translucent while the latter is not. The danger in pulling the cord is to bring the bladder in the operating site. We are not impressed with this expert, particularly since his opinion is in conflict with those expressed by the four outstanding medical experts previously discussed.
From the evidence as summarized we conclude the puncture of young De-tillier’s bladder — unfortunate and painful as it was — was not a result of negligent *879 or improper procedure, rather it was a complication that is always a threat in a hernioplasty. In this case, lack of skill or failure to exercise *due care were not factors to which the puncture could be attributed.
The duty a physician owes to his patient in rendering medical treatment or performing surgical procedures was succinctly set forth in Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1954). We quote:
“A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case. * * * ” 73 So.2d at 782.
See also Uter v. Bone and Joint Clinic, 249 La. 851, 192 So.2d 100 (1966); and Bryant v. St. Paul Fire and Marine Insurance Co., 272 So.2d 448 (La.App.2d Cir. 1973). We concur in the trial court’s finding that the medical testimony affirmatively establishes Dr. Groome did not breach any professional duty of care owed to young Detillier.
Assuming arguendo that the evi-dentiary doctrine of res ipsa loquitur should be invoked, as urged by appellant, we are of the opinion that the defendant proved he possessed the technical knowledge and skill required, which he applied with reasonable diligence and exercised with the degree of care customarily employed by the reputable surgeons in this community, in performing this type of surgical procedure.
For the reasons assigned, the judgment appealed from is affirmed. Costs of this appeal are to be borne by appellant.
Affirmed.
GULOTTA, J., concurs with written reasons.